No. 24-10658

# In the United States Court of Appeals for the Eleventh Circuit

---

**CARLOS FIGUEROA-GIBSON (FEDERAL PRISONER NO. 49762-069),**
*Petitioner-Appellant,*

*v.*

**WARDEN JEFFRY FIKES,**
*Respondent-Appellee.*

---

*On Appeal from the United States District Court for the
Southern District of Georgia
No. 2:23-cv-00025-LGW-BWC (Hon. Lisa Godbey Wood)*

---

## BRIEF OF PETITIONER-APPELLANT

---

CHARLES L. MCCLOUD
ROHIT P. ASIRVATHAM
GARRETT M. WEN*
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
rasirvatham@wc.com*

\* Admitted only in Illinois; practice supervised by D.C. Bar members.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, Petitioner-Appellant Carlos Figueroa-Gibson hereby identifies the following people and entities who have or may have an interest in the outcome of this appeal:

1. Carlos Figueroa-Gibson

2. Hon. Benjamin W. Cheesbro

3. Hon. Lisa G. Wood

4. Jeffry Fikes

5. Shannon Health Statkus

6. Jill E. Steinberg

7. James C. Stuchell

8. Gary Swaney

9. Rohit P. Asirvatham

10. Sarah M. Harris

11. Garrett M. Wen

12. Charles L. McCloud

13. Williams & Connolly LLP

MARCH 20, 2025

/s/ Rohit P. Asirvatham
ROHIT P. ASIRVATHAM

## STATEMENT REGARDING ORAL ARGUMENT

On November 20, 2024, this Court directed the Clerk of the Court to "place this case on the oral argument calendar following the completion of briefing." App.Dkt.20-2:p.2. And Figueroa respectfully submits that oral argument would be helpful to the disposition of this appeal. This case presents a frequently recurring legal issue that district courts in this Circuit have repeatedly resolved in a way that squarely conflicts with decisions of other courts of appeals as well as this Court's precedents. Figueroa respectfully requests 15 minutes to present oral argument.

# TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................1

STATEMENT OF JURISDICTION ....................................................3

STATEMENT OF THE ISSUE............................................................3

STATEMENT OF THE CASE .............................................................4

SUMMARY OF THE ARGUMENT.....................................................7

STANDARD OF REVIEW ...............................................................11

ARGUMENT......................................................................................12

I.    Figueroa Was Not Required To Administratively Exhaust His
      § 2241 Claim .........................................................................12

      A.    Figueroa Was Not Required To Engage In Futile Efforts
            To Exhaust..................................................................12

      B.    The Contrary Rationales Advanced Below Are
            Unpersuasive ..............................................................23

II.   There Are No Colorable Standing Issues .............................27

CONCLUSION...................................................................................34

i

# TABLE OF CITATIONS

Page

## CASES

*Barber v. Thomas*, 560 U.S. 474 (2010) ..............................................................31

*Barker v. Warden*, 2023 WL 1784762 (S.D. Ga. Jan. 12, 2023),
    *report and recommendation adopted,*
    2023 WL 1783782 (S.D. Ga. Feb. 6, 2023) ......................................................34

*Beharry v. Ashcroft*, 329 F.3d 51 (2d Cir. 2003)................................................14

*Blue Martini Kendall, LLC v. Miami Dade County*,
    816 F.3d 1343 (11th Cir. 2016)..........................................................................32

*Booth v. Churner*, 523 U.S. 731 (2001).........................................................22, 24

\* *Boz v. United States*,
    248 F.3d 1299 (11th Cir. 2001) (per curiam) .................................8, 12, 15, 16

*Carr v. Saul*, 593 U.S. 83 (2021) .........................................................................13

*Castro v. Fikes*, 2023 WL 4553668 (S.D. Ga. June 20, 2023),
    *report and recommendation adopted,*
    2023 WL 4549587 (S.D. Ga. July 14, 2023).....................................................33

*Cobb v. Fikes*, 2023 WL 4553648 (S.D. Ga. June 20, 2023),
    *report and recommendation adopted,*
    2023 WL 4549589 (S.D. Ga. July 14, 2023).....................................................33

*Cobb v. Warden*, 2025 WL 340004 (11th Cir. Jan 30, 2025)..............................32

*Darby v. Cisneros*, 509 U.S. 137 (1993) .............................................................19

*Diaz-Morales v. Warden*, 2023 WL 1073728 (S.D. Ga. Jan. 6, 2023),
    *report and recommendation adopted,*
    2023 WL 1070361 (S.D. Ga. Jan. 27, 2023).....................................................34

*Dubrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182 (11th Cir. 2018) ....................13

Page

Cases—continued:

*Dupont v. Swaney*, 2024 WL 4558503 (S.D. Ga. Sept. 9, 2024),
   *report and recommendation adopted,*
   2024 WL 4555397 (S.D. Ga. Oct. 23, 2024) .....................................33

*Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229 (6th Cir. 2006) ...........14

*Fuller v. Rich*, 11 F.3d 61 (5th Cir. 1994) (per curiam) .....................14

*Gallegos-Hernandez v. United States*, 688 F.3d 190 (5th Cir. 2012)...............18

*Gambino v. Morris*, 134 F.3d 156 (3d Cir. 1998).................................14

*Garza v. Davis*, 596 F.3d 1198 (10th Cir. 2010).................................14

*Gonzalez v. Stone*, 2015 WL 106252 (S.D. Ga. Jan 7, 2015) ...............23

*Hanyes v. Edge*, 2019 WL 3326221 (S.D. Ga. June 12, 2019) ...........27

*Hernandez v. Warden*, 2023 WL 1997811 (S.D. Ga. Jan. 23, 2023),
   *report and recommendation adopted,*
   2023 WL 1997115 (S.D. Ga. Feb. 14, 2023) .............................33, 34

*Higginbottom v. Carter*, 223 F.3d 1259 (11th Cir. 2000) ...................25

* *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974) .........................13

*Houze v. Swaney*, 2024 WL 4394798 (S.D. Ga. Sept. 13, 2024),
   *report and recommendation adopted,*
   2024 WL 4393507 (S.D. Ga. Oct. 3, 2024) .......................................33

*Jackson v. Carlson*, 707 F.2d 943 (7th Cir. 1983).............................15

*Johnson v. Fikes*, 2023 WL 4553638 (S.D. Ga. June 20, 2023),
   *report and recommendation adopted,*
   2023 WL 4550936 (S.D. Ga. July 14, 2023)....................................33

*Johnson v. Florida*, 32 F.4th 1092 (11th Cir. 2022) ...........................11

* *Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669 (6th Cir. 2018)...16, 17, 18, 26

iii

Page

Cases—continued:

*Jones v. Bock*, 549 U.S. 199 (2007) ........................................................19

*Jones v. Hendrix*, 599 U.S. 465 (2023)....................................................20

*Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004) ...................................14

*Linfors v. United States*, 673 F.2d 332 (11th Cir. 1982).........................13

*Lopez v. Warden*, 2023 WL 2483485 (S.D. Ga. Feb. 16, 2023),
    *report and recommendation adopted*,
    WL 2479618 (S.D. Ga. Mar. 13, 2023)...............................................33

* *McCarthy v. Madigan*, 503 U.S. 140 (1992)...............................12, 16, 26

*McCauley v. Fikes*, 2023 WL 4084506 (S.D. Ga. June 20, 2023),
    *report and recommendation adopted*,
    2023 WL 4550937 (S.D. Ga. July 14, 2023)......................................33

*McGee v. Warden*, 487 F. App'x 516 (11th Cir. 2012)...........................23

* *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of
    Jacksonville*, 508 U.S. 656 (1993)..............................................11, 28

*Ochoa-Vasquez v. Swaney*, 2024 WL 2967269 (S.D. Ga. Apr. 23, 2024),
    *report and recommendation adopted*,
    2024 WL 2959305 (S.D. Ga. June 12, 2024)....................................33

*Okafor v. Fikes*, 2024 WL 479206 (S.D. Ga. Jan. 3, 2024),
    *report and recommendation adopted*,
    2024 WL 477011 (S.D. Ga. Feb. 7, 2024) .........................................33

*Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982)............................19

*Penalosa v. Stone*, 2022 WL 11456512 (S.D. Ga. Sept. 22, 2022),
    *report and recommendation adopted*,
    2022 WL 11429299 (S.D. Ga. Oct. 19, 2022) ...................................25

*Penalosa v. Stone*, 3:22-cv-41 (S.D. Ga. May 11, 2022), ECF No. 1.................27

iv

Page

Cases—continued:

*Perez v. Joseph*, 2022 WL 2181090 (N.D. Fla. May 4, 2022),
   *report and recommendation adopted*,
   2022 WL 2176505 (N.D. Fla. June 15, 2022)...................................23

*Perez v. Joseph*, 3:22-cv-2055(N.D. Fla. Feb. 17, 2022), ECF No. 1...............27

*Porter v. Nussle*, 534 U.S. 516 (2002) ...................................................21

*Ramirez v. Warden*, 2023 WL 1870932 (S.D. Ga. Jan. 11, 2023),
   *report and recommendation adopted*,
   2023 WL 1869631 (S.D. Ga. Feb. 9, 2023) .......................................34

*Reid v. Streit*, 697 F. App'x 968 (11th Cir. 2017).................................32

* *Reiter v. Cooper*, 507 U.S. 258 (1993) ..........................................7, 14

*Richards v. Dunbar*, 2:21-cv-69 (S.D. Ga. July 21, 2021), ECF No. 1 .............27

*Rodriguez v. Fikes*, 2023 WL 4010896 (S.D. Ga. May 25, 2023),
   *report and recommendation adopted*,
   2023 WL 3997096 (S.D. Ga. June 14, 2023)....................................33

*Rodriguez v. Warden*, 2023 WL 174989 (S.D. Ga. Jan. 12, 2023),
   *report and recommendation adopted*,
   2023 WL 1783777 (S.D. Ga. Feb. 6, 2023) .......................................34

*Ross v. Blake*, 578 U.S. 632 (2016) ..............................................19, 25

*Ryan v. Bentsen*, 12 F.3d 245 (D.C. Cir. 1993)....................................16

* *Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015)..8, 13, 16, 19, 22, 24

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)...............13

*Skinner v. Wiley*, 355 F.3d 1293 (11th Cir. 2004) .........................21, 24

*Timson v. Sampson*, 518 F.3d 870 (11th Cir. 2008)...........................12

*United States v. Bozarov*, 974 F.2d 1037 (9th Cir. 1992)....................17

Page

Cases—continued:

*United States v. Carlos Figueroa-Gibson*,
No. 3:16-cr-00802-01 (D.P.R. June 21, 2021) ...................................4

*Varner v. Shepard*, 11 F.4th 1252 (11th Cir. 2021) ..........................25

*Vera v. Warden*, 2023 WL 1974762 (S.D. Ga. Jan. 19, 2023),
*report and recommendation adopted*,
2023 WL 1967953 (S.D. Ga. Feb. 13, 2023) ....................................34

*Viera v. Dunbar*, 2:21-cv-79 (S.D. Ga. Aug. 30, 2021), ECF No. 1..................27

*Vlandis v. Kline*, 412 U.S. 441 (1973) .............................................5

*Weinberger v. Salfi*, 422 U.S. 749 (1975) .......................................16

*Winck v. England*, 327 F.3d 1296 (11th Cir. 2003) ..........................14

*Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005).....................18

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
247 F.3d 1262 (11th Cir. 2001) .......................................................28

**CONSTITUTION, STATUTES, REGULATIONS, AND RULES**

U.S. Const.
art. II........................................................................................1
art. III .............................................................7, 11, 18, 26, 28

First Step Act (FSA) ..................................................................4, 5, 27

Prison Litigation Reform Act (PRLA).....................9, 10, 21, 22, 24, 25

18 U.S.C.
§§ 1581-1590 .........................................................................4
§ 1591.................................................................................4, 5
§ 1592..................................................................................4
§ 1594..................................................................................5
§ 1597..................................................................................4

Page

Constitution, Statutes, Regulations, and Rules—continued:

§ 3624 ....................................................................................................4
§ 3632 ...........................................................................4, 5, 11, 17, 28, 29

28 U.S.C.
§ 1291 ...................................................................................................3
§ 1331 ...................................................................................................3
§ 2241 ............................. 1, 3, 5, 6, 8, 9, 10, 12, 14, 15, 16, 18, 19, 20, 23, 25, 33
§ 2254 .......................................................................................9, 20, 21

42 U.S.C. § 1997e ........................................................................................21

28 C.F.R.
§ 523.40 *et seq.* .........................................................................................4
§ 523.42 ...............................................................................................30
§ 523.44 ................................................................................................4

Fed. R. App. P. 4 .........................................................................................3

11th Cir. R. 42-1 .........................................................................................3

## OTHER AUTHORITY

Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law
Treatise* § 17.2 ......................................................................................14

## INTRODUCTION

During his time in federal prison, Carlos Figueroa-Gibson has made what the government acknowledges are "commendable" "effort[s] to improve himself." Dkt.6:p.8.[1]  In this case, Figueroa filed a 28 U.S.C. § 2241 habeas petition challenging the constitutionality of a statutory provision that prevents his commendable behavior from translating into time credits that would secure him an earlier release from prison.

The court below dismissed Figueroa's case for failure to exhaust administrative remedies because Figueroa did not first raise his constitutional challenge within the Bureau of Prisons (BOP).  According to the district court, this Court's judge-made administrative exhaustion requirement for § 2241 petitioners mandates exhaustion of even futile claims.

That was error.  As a matter of black-letter administrative law, judge-made administrative exhaustion requirements do not require plaintiffs to exhaust administrative remedies within Article II tribunals before accessing federal courts when doing so would be futile.  This Court has in fact already recognized that this bedrock futility principle applies to the judge-made § 2241 exhaustion requirement.  And every other court of appeals to confront the question has held the same.

---

[1] "Dkt." refers to the district court docket number.  The page numbers (which follow the colon) and those within the docket entry as assigned by the district court ECF system.

1

Under that principle, Figueroa was not required to exhaust here. BOP has neither the authority to unilaterally hold a statute unconstitutional nor the discretion to disregard a clear congressional directive and release Figueroa earlier than the statute permits. Figueroa therefore properly exercised his right to petition for habeas relief in federal court without undertaking the hollow measure of asking BOP to provide relief that BOP is powerless to give. This Court should reverse the district court's grant of summary judgment and remand to permit the district court to address the merits of Figueroa's petition.

## STATEMENT OF JURISDICTION

This is an appeal from a final order of the United States District Court for the Southern District of Georgia dismissing without prejudice Figueroa's petition for habeas corpus relief, which he filed pursuant to 28 U.S.C. § 2241. The district court entered the order and judgment on February 16, 2024. Figueroa timely filed a notice of appeal on March 4, 2024.  *See* Fed. R. App. P. 4(a).  That appeal was dismissed on April 9, 2024 for want of prosecution.  *See* 11th Cir. R. 42-1(b).  It was reinstated on May 29, 2024 by the clerk of this Court.[2]  The district court had jurisdiction under 28 U.S.C. §§ 2241 and 1331. This Court has appellate jurisdiction.  *See* 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether Figueroa was required to exhaust his 28 U.S.C. § 2241 habeas claim within the Bureau of Prisons.

---

[2] Delays in prior filings reaching the Court may often be attributable to issues with the prison's mailing system.

## STATEMENT OF THE CASE

1.  Carlos Figueroa-Gibson is a federal prisoner who is eligible for release in January 2030.  *See* Dkt.1-1:p.1.  Figueroa has been a model prisoner. He has "complet[ed] numerous education classes," including algebra, astronomy, Spanish, personal finance, stock investing, home improvement, guitar, and drawing.  *See* Dkt.1-1:pp.2-3.  He has participated in a work assignment.  *See* Dkt.1:p.5.  He also regularly participates in mental health programs.  *See* Dkt.1-1:p.2.  And he has maintained a spotless disciplinary record.  *See* Dkt.1-1:p.2.  Correctional officers praise Figueroa for "maintain[ing] clear conduct, high level of sanitation and personal hygiene, and good rapport with staff and other inmates."  Dkt.1-1:p.3.  And they have concluded that Figueroa exhibits a "low risk recidivism level."  Dkt.1-1:p.3.

2.  Under the First Step Act (FSA), most prisoners with conduct as impressive as Figueroa's would be earning time credits.  *See* 18 U.S.C. § 3624(b); 28 C.F.R. § 523.40 *et seq.*  These credits can be applied toward early transfer to supervised release.  18 U.S.C. § 3624(g)(1)(A); 28 C.F.R. § 523.44. Not so for Figueroa.  The First Step Act categorically deems prisoners convicted of crimes "relating to … trafficking in persons" ineligible to earn time credits.  18 U.S.C. § 3632(d)(4)(D)(xxvii) (referencing 18 U.S.C. §§ 1581-1592, 1597).  Figueroa has pleaded guilty to one such crime—attempted sex trafficking.  *See United States v. Carlos Figueroa-Gibson*, No. 3:16-cr-00802-

4

01 (D.P.R. June 21, 2021); 18 U.S.C. §§ 1591(a)(1) & (b)(2), 1594(a). As a result, Figueroa has not been accumulating FSA time credits (FTCs) for his good conduct. *See* Dkt.1-2:p.2.

3. Seeking to receive the same credit for his good behavior as everyone else, Figueroa filed a pro se petition for habeas corpus under 28 U.S.C. § 2241 in the Southern District of Georgia. *See* Dkt.1:pp.1-15. He raised facial and as-applied constitutional challenges to the First Step Act's "list of exclusions [c]odified as 18 U.S.C. § 3632(d)(4)(D)"—which includes 18 U.S.C. § 3632(d)(4)(D)(xxvii). Dkt.1:p.7. He argued that the statutory bar violates the Constitution's equal-protection and due-process guarantees by creating an unlawful classification based on "a conclusive presumption" about a group of people without providing "a fair opportunity to rebut" that presumption, *Vlandis v. Kline*, 412 U.S. 441, 446 (1973). Dkt.1:pp.7-11.[3]

The government's motion to dismiss argued that Figueroa lacked standing to bring this petition, that Figueroa had failed to administratively exhaust his claim, and that Figueroa's claim fails on the merits. *See* Dkt.6:pp.3-22. Figueroa rebutted all three points. *See* Dkt.9:pp.1-13. As

---

[3] In his petition, Figueroa stated he was "injure[d]" by 18 U.S.C. § 3632(d)(4)(D)(xxxvii), which references crimes "relating to sexual abuse." Dkt.1:p.2; 18 U.S.C. § 3632(d)(4)(D)(xxxvii). As the government acknowledges, this was "a typographical error": Figueroa "meant to challenge Subsection xxvii," which references crimes "relating to … trafficking of humans." Dkt.6:p.4 n.2; 18 U.S.C. § 3632(d)(4)(D)(xxvii).

relevant here, Figueroa argued that the exhaustion requirement courts sometimes apply to § 2241 petitions does not extend to claims like his, which would be futile to bring within the Bureau of Prisons (BOP). *See* Dkt.9:pp.6-8.

A magistrate judge reviewed the motion to dismiss and recommended that the district court dismiss Figueroa's petition because Figueroa had "fail[ed] to exhaust his available administrative remedies prior to the filing of his § 2241 Petition." Dkt.12:p.7. The magistrate judge concluded that the judge-made § 2241 administrative exhaustion requirement requires habeas petitioners to exhaust even futile claims. Dkt.12:pp.6-7. And in a single sentence (that also appears nearly verbatim in many other opinions by this judge, *see infra* n.11), the magistrate judge also concluded that "Even if a futility exception existed, Figueroa-Gibson fails to show any extraordinary circumstances warranting application of the exception." Dkt.12:p.7 (quotations omitted). The magistrate judge's opinion did not address standing or the merits. *See* Dkt.12:pp.1-9.

The district court adopted the magistrate judge's report and recommendation as the opinion of the court. *See* Dkt.13:p.1. And the district court denied Figueroa's motion to reconsider. *See* Dkt.16:pp.1-3; Dkt.24:pp.1-3. In doing so, the district court reiterated its conclusion that "there is no futility exception for exhaustion of remedies for the purposes of a § 2241

6

petition." Dkt.24:p.2 (citations omitted). The district court also denied Figueroa in forma pauperis status on appeal, adopting the magistrate judge's view that Figueroa's exhaustion argument is "frivolous." Dkt.12:pp.7-9; *see also* Dkt.13:p.1.

After Figueroa appealed, this Court concluded that his "appeal is not frivolous," and permitted Figueroa to proceed in forma pauperis. App.Dkt.25:p.2. Upon Figueroa's request for counsel, this Court appointed undersigned counsel to represent him. *See* App.Dkt.26.

## SUMMARY OF THE ARGUMENT

I. This Court's judge-made administrative exhaustion requirement does not bar judicial review here.

A. 1. As a matter of basic administrative law, the "doctrine of exhaustion of administrative remedies" applies only "[w]here relief is available from an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). Therefore, judge-made administrative exhaustion requirements, like the one at issue here, do not require plaintiffs to engage in exercises in futility within non-Article III tribunals before accessing an Article III court. That means that plaintiffs need not engage in the pointless process of bringing claims that an agency lacks the power to remedy to the agency that lacks the power to remedy them before coming to federal court. This futility principle is well recognized by this Court and by the Supreme Court.

7

This Court's judge-made administrative exhaustion requirement for § 2241 habeas petitions brought by federal prisoners is not exempt. This Court has in fact already held that a § 2241 "petitioner need not exhaust his administrative remedies 'where the administrative remedy will not provide relief commensurate with the claim.'" *Boz v. United States*, 248 F.3d 1299, 1300 (11th Cir. 2001) (per curiam), *overruled in part on other grounds, as recognized by Santiago-Lugo v. Warden*, 785 F.3d 467, 471-75 (11th Cir. 2015) (citation omitted). To the contrary, § 2241 habeas petitioners need only exhaust administrative remedies when "administrative remedies [are] available" and "those remedies may provide the relief [the petitioner] seeks." *Id.* Every other court of appeals to consider the question has reached the same conclusion.

2. That futility principle resolves this appeal. BOP cannot release prisoners earlier than Congress authorized by unilaterally declaring statutes unconstitutional or ignoring clear statutory directives. Asking BOP to do so would therefore be an exercise in futility. At bottom, Figueroa's beef is with Congress, not BOP. Figueroa is not claiming that BOP has done anything wrong; BOP is merely following Congress' clear statutory requirements. Figueroa's complaint is with Congress for enacting an unconstitutional statute. Raising his constitutional challenge within BOP would therefore be pointless.

8

3.  Interpreting the judge-made § 2241 exhaustion requirement to apply even where exhaustion would be futile would raise serious constitutional concerns.  Section 2241 contains no textual exhaustion requirement at all.  And courts are not typically permitted to supplement Congress' text with extra-statutory requirements based on judges' policy preferences.  Doing so would exceed the judicial power and transgress constitutional separation-of-powers lines.  The Supreme Court has therefore admonished that judge-made administrative exhaustion requirements must at least be grounded in congressional intent.

Here, however, it is clear that Congress consciously chose not to mandate exhaustion in cases like this—and certainly evinced no intent that any judge-made exhaustion requirement should be unbounded by traditional futility principles.  Congress expressly required some § 2241 habeas petitioners to exhaust remedies—those "in custody pursuant to the judgment of a state Court"—but chose not to require the same for federal petitioners like Figueroa.  *See* 28 U.S.C. § 2254(b)(1).  And for the exhaustion requirement Congress did impose, Congress took care to provide futility-like carveouts.  *See id.*  Moreover, through the Prison Litigation Reform Act (PLRA), Congress addressed concerns about prisoner filings in federal court by imposing a strict exhaustion requirement, but only on prisoners bringing non-habeas claims regarding the conditions of their confinement—claims that BOP

9

is well suited to address and redress. Separation-of-powers principles dictate, at a minimum, that any judicially added exhaustion requirement to § 2241 conform to traditional exhaustion principles.

B.   The contrary rationales advanced by the district court and the government below are unpersuasive. Among other errors, the district court and the government relied heavily on nonbinding cases that either mistook the judge-made §2241 exhaustion requirement for a jurisdictional one (a view this Court has already rejected) or analyzed the PLRA exhaustion requirement (which this Court has already held inapplicable in habeas cases like this one). Moreover, the district court completely confused the matter by itself expressly treating the PLRA's strict textual exhaustion requirement as controlling here, in direct conflict with this Court's instruction.

Nor can the policy rationales advanced below overcome Congress' clear intent to not require exhaustion in cases like this. None of the traditional policy justifications for administrative exhaustion requirements apply here, where the claim is regarding an error made by Congress, and where BOP has no power to remedy that error.

II.   The standing concern the government advanced below poses no barrier to this Court's review. The government did not even advance a complete standing argument below. The government merely argued that *one* of Figueroa's injuries—the injury he will suffer from serving additional prison

10

time—is not redressable.  But Figueroa suffers another well-recognized Article III injury—the "denial of equal treatment" caused because the government has "erect[ed] a barrier that makes it more difficult" for him to "obtain a benefit than it is for members of another group." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).  Figueroa is therefore injured by § 3632(d)(4)(D)(xxvii)'s imposition of a barrier that renders him unable to compete for FTCs on equal footing with other prisoners.  That injury would plainly be redressed by removing that statutory barrier.

And in any event, Figueroa's additional-prison-time injury is redressable too.  Removing the statutory prohibition on Figueroa receiving FTCs for his rehabilitative activities would immediately result in Figueroa's already-completed activities translating into FTC time credits, reducing his time in prison.

## STANDARD OF REVIEW

This Court "review[s] *de novo* the dismissal of a habeas petition on legal grounds, including the application of the doctrine of exhaustion." *Johnson v. Florida*, 32 F.4th 1092, 1095 (11th Cir. 2022) (citations omitted).  The Court

11

also construes pro se filings, such as the ones made below, liberally. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## ARGUMENT

### I. Figueroa Was Not Required To Administratively Exhaust His § 2241 Claim

#### A. Figueroa Was Not Required To Engage In Futile Efforts To Exhaust

The district court erred in barring Figueroa's habeas petition for failure to exhaust administrative remedies. As this Court established decades ago, a § 2241 "petitioner need not exhaust his administrative remedies 'where the administrative remedy will not provide relief commensurate with the claim.'" *Boz*, 248 F.3d at 1300 (citation omitted). In other words, exhaustion is not required when exhaustion would be futile—for instance, when, as here, the prisoner challenges "the constitutionality of a statute," rather than any discretionary BOP decision. *See McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992).

1. First principles dictate that the § 2241 administrative exhaustion requirement does not require habeas petitioners to engage in futile efforts to exhaust. This exhaustion requirement cannot be found in any statutory text: "Section 2241 itself does not impose an exhaustion requirement" at all.

12

*Santiago-Lugo*, 785 F.3d at 474. Instead, it is a "judge-made," "non-jurisdictional," "administrative" exhaustion requirement. *See id.* at 474-75. And as a matter of black-letter administrative law, judge-made, non-jurisdictional administrative exhaustion requirements do not require litigants to engage in futile efforts to exhaust.

The Supreme Court "has consistently recognized a futility exception to exhaustion requirements." *Carr v. Saul*, 593 U.S. 83, 93 (2021) (collecting cases); *see also, e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (exhaustion requirements do not impede judicial review "when exhaustion would prove 'futile.'" (citations omitted)). This Court, too, has long recognized that under "basic exhaustion principle[s] … only those remedies which provide a real opportunity for adequate relief need be exhausted." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). That means "exhaustion is inapposite and unnecessary when resort to the administrative reviewing body would be futile," such as when "the relief requested is not within the authority or power of [the agency] to grant." *Id.*[4]

---

[4] *See also, e.g.*, *Dubrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1191 (11th Cir. 2018) ("[E]xhaustion of administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate." (citation omitted)); *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) ("[E]xhaustion is not required where no genuine opportunity for adequate

This futility principle is inherent in the nature of an administrative exhaustion requirement. After all, the "doctrine of exhaustion of administrative remedies" applies only "[w]here relief is available from an administrative agency." *Reiter*, 507 U.S. at 269. As Justice Scalia explained, if the agency has "no power" to issue the sought-after relief, the doctrine is "inapplicable." *Id.* It is thus fundamental that when it comes to judge-made exhaustion requirements, a "petitioner is not required to exhaust an administrative remedy when that would be an exercise in futility." Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise*, § 17.2.

Unsurprisingly then, every court of appeals to confront the question has "recognize[d] that the [§ 2241] habeas exhaustion requirement" does not apply "where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks." *See Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006) (citations omitted); *see also, e.g.*, *Garza v. Davis*, 596 F.3d 1198, 1203-04 (10th Cir. 2010); *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004); *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam); *Gambino v.*

---

relief exists … or administrative appeal would be futile."); *Winck v. England*, 327 F.3d 1296, 1304 (11th Cir. 2003) (same).

*Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *cf. Jackson v. Carlson*, 707 F.2d 943, 949 (7th Cir. 1983) (the § 2241 exhaustion requirement comes "with the usual exceptions").

This Court has held the same. In *Boz*, this Court considered a § 2241 petition from petitioner claiming that his detention "violate[s] his due process rights." 248 F.3d at 1299. The petitioner, an "alien," had not exhausted administrative remedies within the Immigration and Naturalization Service. *Id.* at 1300. This Court explained that generally, "a challenge to agency actions in the courts must occur after available administrative remedies have been pursued." *Id.* (citation omitted). But the Court also made clear that "a petitioner need not exhaust his administrative remedies where the administrative remedy will not provide relief commensurate with the claim." *Id.* (citations omitted).

This Court ultimately held that the petitioner could not directly sue in federal court because (1) he "has not exhausted the administrative remedies available to him" *and* (2) "those remedies may provide the relief he seeks." *Id.* It was therefore crucial that in that case (unlike here), the agency had express discretion to "release[]" the petitioner if the agency determined that he "is not a threat to the community and is likely to comply with the removal order,"

15

rendering exhaustion not futile. *Id.* at 1300-01 (citations omitted). *Boz* therefore recognized and applied the futility principle, making it binding law in this Circuit and precluding the district court's contrary conclusion.[5]

2. The long-established futility principle requires reversal here because bringing this facial constitutional challenge within BOP would amount to an exercise in futility. Futility principles dictate that courts should "not fault a petitioner for failing to raise a facial constitutional challenge in front of an administrative body that could not entertain it." *Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669, 677 (6th Cir. 2018) (citing *McCarthy*, 503 U.S. at 147-48). And BOP, "like all administrative agencies, has no authority to entertain a facial constitutional challenge to the validity of a law." *Jones Bros.*, 898 F.3d at 677.[6] Nor can BOP release prisoners earlier than courts and Congress have

---

[5] *Boz*, as with this Court's other contemporaneous § 2241 exhaustion decisions, proceeded under the view that the exhaustion requirement is jurisdictional. In *Santiago-Lugo*, this Court held that *Boz* and its contemporaries, "[t]o the extent that" they "held or stated that exhaustion is a jurisdictional prerequisite to § 2241 relief … have been undermined to the point of abrogation." 785 F.3d at 475 n.5. *Boz*'s recognition that the traditional futility principle applies to the § 2241 exhaustion requirement remains binding circuit precedent.

[6] *See also, e.g.*, *Weinberger v. Salfi*, 422 U.S. 749, 765-66 (1975) ("[T]he constitutionality of a statutory requirement [is] a matter which is beyond [an agency's] jurisdiction to determine."); *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993) ("Because the constitutionality of a statutory provision is an issue

authorized.

This does not necessarily mean that administrative exhaustion of any claim raising a constitutional challenge to a statute will always be futile. If, for instance, a statute merely authorizes (but does not require) an agency to engage in an allegedly unconstitutional practice, challenging the constitutionality of that statutory authorization within the agency might not be futile because the agency might be convinced to exercise its discretion under the statute to discontinue its allegedly unconstitutional practice. *See Jones Bros.*, 898 F.3d at 677.

But constitutional challenges like this one, where the agency lacks any discretion to apply the statutory provision in a way that would redress the plaintiff's injury, are futile. *See* 18 U.S.C. § 3632(d)(4)(D) ("A prisoner is ineligible to receive time credits … if the prisoner is serving a sentence for a conviction under any of the following provisions of law."). BOP is not statutorily permitted to grant the relief Figueroa seeks, so there is no point in asking BOP for relief; Figueroa's gripe is with *Congress*, not BOP. As Chief

---

beyond [the agency's] competence to decide, exhaustion is futile."); *United States v. Bozarov*, 974 F.2d 1037, 1040 (9th Cir. 1992) ("[A]n agency has no authority to declare its governing statute unconstitutional.").

17

Judge Sutton explained for the Sixth Circuit, in cases like this, where there is "no permissible way to interpret" the statutory provision "in a manner consistent with" a challenger's constitutional claim, "it would be futile to bring that claim to" the agency "and senseless for an Article III court" to require him to do so. *Jones Bros.*, 898 F.3d at 677.

Applying similar logic, other courts of appeals have held that the judge-made § 2241 administrative exhaustion requirement does not require exhaustion of challenges to the validity of, as opposed to an erroneous application of, BOP regulations. In one case, the petitioner "challenge[d] the constitutionality" of "BOP regulations." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). The Fifth Circuit concluded that because the petitioner's "claim is not that the BOP has erred in its application of the regulations," but rather that "the regulation itself … violates due-process and equal-protection rights," "it would have been futile for him to make an administrative challenge seeking this relief." *Id.* And in a similar context, the Third Circuit held that exhausting BOP remedies is "futile" when the petitioner "is not challenging the application of BOP regulations, but their validity." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005). If it is futile to bring a facial challenge to BOP's own regulations within

18

BOP, then the same is surely true of a facial constitutional challenge to a statute, which BOP lacks authority to modify.

3.    Holding otherwise would raise serious constitutional concerns. Through § 2241, Congress provided a cause of action for habeas petitioners and did not see fit to impose any accompanying administrative exhaustion requirement. *See Santiago-Lugo*, 785 F.3d at 474. Courts are generally not permitted to insert extratextual statutory requirements. For instance, the Supreme Court has held that "crafting and imposing" procedural exhaustion-related rules "not required by the" governing statute "exceeds the proper limits on the judicial role." *Jones v. Bock*, 549 U.S. 199, 203 (2007). The Supreme Court has thus repeatedly "overturned judicial rulings that imposed extra-statutory limitations on a prisoner's capacity to sue." *Ross v. Blake*, 578 U.S. 632, 640 n.1 (2016) (citation omitted).

Accordingly, while courts have sometimes considered themselves free to impose extra-statutory exhaustion requirements, that freedom is still constrained by basic separation-of-powers principles. In particular, "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 513 (1982); *see also Darby v. Cisneros*, 509 U.S. 137,

144-45 (1993) ("[O]f paramount importance to any exhaustion inquiry is congressional intent." (quotations omitted)).

Here, congressional intent points the opposite way. Congress has considered concerns about unfiltered judicial review of prisoner claims and responded surgically by imposing express exhaustion requirements for some claims but not for others. That choice should be respected. *See Jones v. Hendrix*, 599 U.S. 465, 478 (2023) ("The expression of one thing implies the exclusion of others." (quotation omitted)). Separation-of-powers principles therefore, at a minimum, dictate that any judicially added exhaustion requirement to § 2241 conform to traditional limits.

Start with the statute at issue here, § 2241—the general habeas statute. Section 2241 broadly authorizes habeas relief for both federal and state prisoners. Under § 2241's plain text, there is no general across-the-board exhaustion requirement. Instead, Congress chose to impose an express exhaustion requirement for a particular subset of potential § 2241 petitioners, requiring those "in custody pursuant to the judgment of a state Court" to "exhaust[] the remedies available in the courts of the State." *Id.* § 2254(b)(1). Congress imposed no such requirement for federal § 2241 petitioners like Figueroa.

20

Given that selective intervention, it would be particularly perverse to hold that Figueroa must administratively exhaust claims that BOP is impotent to remedy. While Congress expressly required exhaustion for those imprisoned under state judgments, Congress explicitly excused exhaustion for such prisoners when "there is an absence of an available State corrective process" or when "such process" would be "ineffective to protect the rights of the applicant." *Id.* § 2254(b)(1)(B). Habeas petitioners should not be treated less favorably under judge-made exhaustion requirements than under analogous textual exhaustion requirements.

Another indication that requiring exhaustion here would flout Congress' intent is the fact that Congress responded to concerns about the "quantity" and "quality" of prisoner suits in federal courts in the 1990s by imposing administrative exhaustion requirements for certain prisoner suits, but not for habeas petitions. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (citation omitted). Through the PLRA, Congress provided that "[n]o action shall be brought *with respect to prison conditions* … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). But Congress chose to not extend that exhaustion requirement to habeas petitions. *See Skinner v. Wiley*, 355 F.3d 1293, 1294 (11th Cir. 2004),

21

*abrogated in part on other grounds, as recognized by Santiago-Lugo*, 785 F.3d at 71-75, (holding that the PLRA's exhaustion requirement "does not apply to habeas petitions"). And certainly not to habeas petitions like this one, which involves no claims about prison conditions. Courts should take care to respect Congress' decision as much as possible, especially given that Congress had a perfectly rational reason to require exhaustion in PLRA cases but not in cases like Figueroa's: BOP is well suited and able to redress PLRA claims about a prisoner's conditions of confinement, but BOP cannot release prisoners earlier than courts and Congress have authorized.

Moreover, even the PLRA's harsh exhaustion requirement does not apply "where the relevant administrative procedure lacks authority to provide any relief." *See Booth v. Churner*, 523 U.S. 731, 736 & n.4 (2001). It would be unconscionable to hold differently regarding this judge-made exhaustion requirement.

These targeted interventions by Congress indicate that it would be entirely inappropriate to impose on this statute a judge-made exhaustion requirement that lacks traditional futility limits. And doing so would raise

serious constitutional questions.[7]

### B.    The Contrary Rationales Advanced Below Are Unpersuasive

1.    The court below relied on "numerous courts [that] have concluded that there is no futility exception for exhaustion of remedies for the purposes of § 2241 petition."  Dkt.24:p.2.  But the court cited district court decisions (which in turn relied on unpublished court of appeals decisions) and ignored the body of published court of appeals opinions, including binding Eleventh Circuit precedent establishing the opposite.  *See* Dkt.24:pp.2-3; *supra* pp.15-16.

Making matters worse, the district court (at Dkt.24:p2-3, Dkt.12:p6) leaned heavily on cases that concluded that there is no futility exception based on the faulty assumption that this exhaustion requirement is jurisdictional.[8]

---

[7] There is of course no need in this case to revisit the propriety of this judge-made exhaustion requirement writ large if the exhaustion requirement does not require exhaustion here.  But in arguing that he is not required to exhaust, Figueroa preserves the argument that there should be no judge-made § 2241 administrative exhaustion requirement at all.

[8] *See Gonzalez v. Stone*, 2015 WL 106252, at *3 (S.D. Ga. Jan 7, 2015) (concluding that there is no futility exception "because exhaustion of administrative remedies is jurisdictional"); *Perez v. Joseph*, 2022 WL 2181090, at *2 (N.D. Fla. May 4, 2022), *report and recommendation adopted*, 2022 WL 2176505 (N.D. Fla. June 15, 2022) (relying on *McGee v. Warden*, 487 F. App'x 516, 518 (11th Cir. 2012), which concluded that no futility exception applies because the exhaustion requirement is jurisdictional).

But this Court has since rejected that view and squarely held that the exhaustion requirement is not jurisdictional. *See Santiago-Lugo*, 785 F.3d at 475. Regardless of whether jurisdictional exhaustion requirements force futile efforts to exhaust, non-jurisdictional, judge-made exhaustion requirements like this one do not. *See supra* pp.12-22.

2. The decision below also concluded that courts "may not excuse a failure to exhaust" because "*the PLRA's* … text suggests no limits on an inmate's obligation to exhaust." Dkt.12:p.2 (emphasis added) (citation omitted). The government pointed to the PLRA's exhaustion requirement too. *See* Dkt.6:pp.11, 14-15. But, as this court has held, the PLRA's exhaustion requirements "do[] not apply to habeas petitions." *Skinner*, 355 F.3d at 1294. And they certainly do not apply to habeas petitions like this one, which do not raise a conditions-of-confinement claim. *See supra* pp.21-22. To the contrary, the fact that Congress imposed the PLRA's harsh exhaustion requirement on some types of prisoner suits but not this one weighs *against*, not in favor of, requiring exhaustion here. *See supra* pp.21-22. And, as explained, even the PLRA's harsh statutory exhaustion requirement does not apply "where the relevant administrative procedure lacks authority to provide any relief." *See Booth*, 523 U.S. at 736 & n.4; *supra* p.22. This error thoroughly infected the

24

district court's reasoning:  The district court (at Dkt.12:pp.2, 3, 6-7) repeatedly cited cases that adjudicated (or that mistakenly relied on cases that adjudicated) PLRA claims.[9]

3.  The court below further reasoned that "it is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate" and quoted another district court's conclusion that courts cannot "engraft a futility exception onto" the § 2241 exhaustion requirement. Dkt.12:p.3 (citation omitted).  But given that judges created this exhaustion requirement, judges surely have the authority (and duty) to define its bounds. Moreover, futility principles are already inherent in judicially created exhaustion requirements.  *See supra* pp.12-14.  And courts frequently assess whether administrative remedies would be futile.  *See supra* pp.14-15.

4.  The court below also pointed to policy rationales for requiring exhaustion.  Dkt.12:pp.2-3.  But such policy considerations are a matter for

---

[9] *See Varner v. Shepard*, 11 F.4th 1252, 1264 (11th Cir. 2021) (rejecting "creating a futility exception *to the PLRA*" (emphasis added)); *Ross v. Blake*, 578 U.S. 632, 639 (2016) (same); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (same, emphasizing "the plain language of" the PLRA); *Penalosa v. Stone*, 2022 WL 11456512, at *3 (S.D. Ga. Sept. 22, 2022), *report and recommendation adopted*, 2022 WL 11429299 (S.D. Ga. Oct. 19, 2022) (relying on *Varner* and *Higginbottom*, and other cases that rely on *Higginbottom*).

25

Congress, not the courts. And as explained above, every indicator of congressional intent suggests that Congress did not deem strict exhaustion requirements appropriate in cases like this. *See supra* pp.20-22.

In any event, even if this Court does wish to define the metes and bounds of its exhaustion requirement by weighing the policy costs and benefits of exhaustion scenario by scenario, the balance tips decidedly against requiring exhaustion here. A primary justification for exhaustion is that exhaustion provides the agency "an opportunity to correct its own mistakes." *McCarthy*, 503 U.S. at 145. But here, BOP has made no mistake—it correctly applies the statute Congress wrote. *Congress* made the mistake by enacting an unconstitutional provision.

Nor does this facial constitutional challenge involve fact-intensive claims such that this Court needs extraneous agency proceedings to "produce a useful record for subsequent judicial consideration." *Id.* (citation omitted). This case does not concern any agency decision. All a court needs in order to decide the merits of Figueroa's challenge is a copy of the Constitution and the U.S. Code. It would thus be "senseless for an Article III court" to require Figueroa to bring his claim to an entirely irrelevant body before returning to federal court. *See Jones Bros.*, 898 F.3d at 677.

26

5. Finally, the government and the district court pointed to cases where petitioners have been required to exhaust "FSA-related claims." *See* Dkt.6:pp.15-16; Dkt.24:p.2. Those cases, however, involved challenges to BOP's *applications or interpretations* of the FSA, not challenges to the statute's constitutionality.[10] So, in those cases (unlike this one) BOP had the discretion to adopt petitioner's reading of the statute and remedy the asserted problems.

## II.    There Are No Colorable Standing Issues

The government raised standing concerns below, arguing that one of Figueroa's injuries—the additional time he will serve in prison because of his ineligibility for FSA credits—is not redressable. *See* Dkt.6:pp.5-10. But that argument is beside the point because under clear precedent Figueroa suffers another injury that is plainly redressable. And in any event, favorable resolution of his constitutional challenge would redress Figueroa's prison-time

---

[10] *See Penalosa*, 3:22-cv-41 (S.D. Ga. May 11, 2022), ECF No. 1 at 3-4 (alleging BOP mis-determined that prisoner is deportable and thus ineligible to benefit from earned time credits); *Viera v. Dunbar*, 2:21-cv-79 (S.D. Ga. Aug. 30, 2021), ECF No. 1 at 6 (alleging BOP failed to "award[]" time credits even though prisoner "completed several EBRR programs"); *Richards v. Dunbar*, 2:21-cv-69 (S.D. Ga. July 21, 2021), ECF No. 1 at 6 (same); *Perez v. Joseph*, 3:22-cv-2055(N.D. Fla. Feb. 17, 2022), ECF No. 1 at 3 (same); *Hanyes v. Edge*, 2019 WL 3326221, at *1 (S.D. Ga. June 12, 2019) (alleging BOP used wrong "method of calculation" by misinterpreting the First Step Act).

27

injury as well.

1.  Precedent squarely establishes that Figueroa has standing based on an "injury" the government completely ignored below: "the denial of equal treatment resulting from the barrier" imposed by § 3632(d)(4)(D)(xxvii). *Jacksonville*, 508 U.S. at 666.  That injury is directly caused by 18 U.S.C. § 3632(d)(4)(D)(xxvii), which renders Figueroa categorically ineligible for FTCs based on a classification he challenges as unconstitutional on equal protection grounds.  Removing that bar would allow Figueroa to pursue FTCs on equal footing with others.

That is all Article III requires.  As the Supreme Court has made clear, "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," a plaintiff "need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Jacksonville*, 508 U.S. at 666. Whether Figueroa will ultimately obtain an earlier release under the FSA once the statutory eligibility barrier is cleared away is therefore beside the point.  The "injury-in-fact" is the "the fact of unequal treatment," without regard to the loss of "the ultimate benefit." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1281 (11th Cir. 2001).  The government never raised

28

any concern that this injury is not redressable below.

2. Figueroa separately suffers an additional-prison-time injury—the injury the government claimed not-redressable. But this additional-prison-time injury is plainly redressable too. Successfully challenging § 3632(d)(4)(D)(xxvii) would result in less prison time for Figueroa. Prisoners, "except for an ineligible prisoner under subparagraph (D)," accumulate FTCs if they complete "evidence-based recidivism reduction programming" (EBRR) or "productive activities." 18 U.S.C. § 3632(d)(4)(A). Figueroa has "participated in a plethora of EBRR and Productive Activities which have been determined by his Unit Team as necessary … totaling more than a year's work of 'qualified programming.'" Dkt.1:p.5. Figueroa would thus be accumulating FSA time credits if not for his ineligibility "under subparagraph (D)," which is the subject of this challenge. Clearing away that eligibility bar would therefore allow Figueroa to secure an earlier release.

The government's arguments to the contrary lack merit. The government vaguely suggests that Figueroa's EBRR and productive activities participation may not result in him earning FTCs if those activities were not ones "recommended based on [his] individualized risk and needs assessment." Dkt6:p.6. But Figueroa's petition contains hard evidence: The petition

29

includes a copy of his individualized needs plan, which shows that he has participated in a "Work Assignment[]" and that "work" is one of his recommended "needs." Dkt1:p.5; Dkt.1-1:pp.2-3. Further, Figueroa has alleged that the activities he participated in were "determined by his Unit Team as necessary," amounted to "qualified programming," and would normally count for "more than half a year[']s worth of 'Time Credits.'" Dkt.1:p.5. This is more than enough at the motion to dismiss stage.

The government appears to also find fault with the fact that Figueroa has not pled facts showing that he has participated in "EBRR Programs or PAs that staff recommended for *each* of the areas where he was assessed as having needs." Dkt.6:p.9 (emphasis in original). But there is no requirement that prisoners participate in programing for *every* area in which they have needs in order to earn FTCs; prisoners earn FTCs for *any* successful participation. *See* 28 C.F.R. § 523.42(c).

The government additionally claims that Figueroa would not be eligible to apply his earned FTCs to his sentence because he has not "alleged that he would have earned FTCs in an amount equal to the remainder of his term of imprisonment." Dkt.6:p.9. But that does not change the fact that, all else equal, a successful constitutional challenge would result in a *reduced* term of

30

imprisonment for Figueroa, even if it would not result in his immediate release. Moreover, there is no reason to suspect that Figueroa will not continue his admirable behavior once he is deemed eligible to earn FTCs: Even the government "commend[s]" Figueroa's "effort to improve himself" thus far, despite not being eligible for FTCs. Dkt.6:p.8.

The upshot of the government's theory here appears to be that prisoners can never challenge the improper withholding of time credits unless that challenge would immediately result in their release. That would mean that the hundreds (if not thousands) of decisions resolving such challenges without dismissing for lack of jurisdiction were wrongly decided. *See, e.g.*, *Barber v. Thomas*, 560 U.S. 474, 476 (2010) (adjudicating time credit challenge). None of the government's arguments justify that startling result.

3. The district court's failure to consider the government's meritless and incomplete standing argument does not warrant remand without first resolving the exhaustion issue. *First*, the government did not make a complete standing argument below because it failed to contend that Figueroa's barrier-to-participation injury is not redressable. That is an independent basis for standing, rendering the government's standing arguments below irrelevant to this appeal.

*Second*, the fact that the district court did not opine on standing is not a barrier to this Court's review. Courts have an obligation to assure themselves of standing in every case, even if not raised by parties. Yet this court sensibly does not require remand whenever a district court does not have a standing section in its opinion. Indeed, this Court frequently evaluates its own jurisdiction even if the district court did not weigh in below standing. *See, e.g.*, *Reid v. Streit*, 697 F. App'x 968, 971 (11th Cir. 2017); *Blue Martini Kendall, LLC v. Miami Dade County*, 816 F.3d 1343, 1348 (11th Cir. 2016). Thus, unless this Court believes that it lacks jurisdiction to decide this appeal or if it believes that further factual development is required to resolve any standing concerns, there is no reason to remand without resolving the district court's actual basis for dismissal. Otherwise, the parties will be right back in this court on the same exhaustion issue after months of unnecessary delay.

*Third*, this case is different from *Cobb v. Warden*, 2025 WL 340004 (11th Cir. Jan 30, 2025), where this Court remanded because the decision below similarly failed to address the government's standing argument. There, the petitioner was proceeding pro se in this Court and the briefing did not provide a clear answer on standing. Significantly, the pro se petitioner there did not point out the barrier-to-participation injury, which under clear precedent

32

suffices to establish standing.  Here, Figueroa has clearly laid out for this Court why there is standing, making any remand unnecessary.

*Finally*, and also unlike in *Cobb*, this appeal presents the Court with the much-needed opportunity to decide the § 2241 exhaustion issue with the benefit of counseled briefing.  By the time this case would come back on appeal if this were to Court remand, the district courts in this circuit may have incorrectly barred any futility argument in dozens more cases.[11]    This

---

[11] For examples of similar report and recommendations in the past two years alone, *see Houze v. Swaney*, 2024 WL 4394798, at *2 (S.D. Ga. Sept. 13, 2024), *report and recommendation adopted*, 2024 WL 4393507 (S.D. Ga. Oct. 3, 2024); *Dupont v. Swaney*, 2024 WL 4558503, at *2 (S.D. Ga. Sept. 9, 2024), *report and recommendation adopted*, 2024 WL 4555397 (S.D. Ga. Oct. 23, 2024); *Ochoa-Vasquez v. Swaney*, 2024 WL 2967269, at *2 (S.D. Ga. Apr. 23, 2024), *report and recommendation adopted*, 2024 WL 2959305 (S.D. Ga. June 12, 2024); *Okafor v. Fikes*, 2024 WL 479206, at *2 (S.D. Ga. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 477011 (S.D. Ga. Feb. 7, 2024); *Johnson v. Fikes*, 2023 WL 4553638, at *2 (S.D. Ga. June 20, 2023), *report and recommendation adopted*, 2023 WL 4550936 (S.D. Ga. July 14, 2023); *Castro v. Fikes*, 2023 WL 4553668, at *2 (S.D. Ga. June 20, 2023), *report and recommendation adopted*, 2023 WL 4549587 (S.D. Ga. July 14, 2023); *Cobb v. Fikes*, 2023 WL 4553648, at *2 (S.D. Ga. June 20, 2023), *report and recommendation adopted*, 2023 WL 4549589 (S.D. Ga. July 14, 2023); *McCauley v. Fikes*, 2023 WL 4084506, at *2 (S.D. Ga. June 20, 2023), *report and recommendation adopted*, 2023 WL 4550937 (S.D. Ga. July 14, 2023); *Rodriguez v. Fikes*, 2023 WL 4010896, at *2 (S.D. Ga. May 25, 2023), *report and recommendation adopted*, 2023 WL 3997096 (S.D. Ga. June 14, 2023); *Lopez v. Warden*, 2023 WL 2483485, at *3 (S.D. Ga. Feb. 16, 2023), *report and recommendation adopted*, WL 2479618 (S.D. Ga. Mar. 13, 2023); *Hernandez v. Warden*, 2023 WL 1997811, at *3 (S.D. Ga. Jan. 23, 2023), *report and recommendation adopted*, 2023 WL 1997115 (S.D. Ga. Feb. 14, 2023); *Vera v.*

frequently litigated issue is cleanly teed up here and the Court should decide it.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

MARCH 20, 2025                    Respectfully submitted,

                                 /s/ Rohit P. Asirvatham
                                 CHARLES L. MCCLOUD
                                 ROHIT P. ASIRVATHAM
                                 GARRETT M. WEN*
                                 WILLIAMS & CONNOLLY LLP
                                   680 Maine Avenue S.W.
                                   Washington, DC 20024
                                   (202) 434-5000
                                   rasirvatham@wc.com

                                 Counsel for Petitioner-Appellant

* Admitted only in Illinois; practice supervised by D.C. Bar members.

---

*Warden*, 2023 WL 1974762, at *3 (S.D. Ga. Jan. 19, 2023), *report and recommendation adopted*, 2023 WL 1967953 (S.D. Ga. Feb. 13, 2023); *Barker v. Warden*, 2023 WL 1784762, at *3 (S.D. Ga. Jan. 12, 2023), *report and recommendation adopted*, 2023 WL 1783782 (S.D. Ga. Feb. 6, 2023); *Rodriguez v. Warden*, 2023 WL 174989, at *3 (S.D. Ga. Jan. 12, 2023), *report and recommendation adopted*, 2023 WL 1783777 (S.D. Ga. Feb. 6, 2023); *Ramirez v. Warden*, 2023 WL 1870932, at *3 (S.D. Ga. Jan. 11, 2023), *report and recommendation adopted*, 2023 WL 1869631 (S.D. Ga. Feb. 9, 2023); *Diaz-Morales v. Warden*, 2023 WL 1073728, at *3 (S.D. Ga. Jan. 6, 2023), *report and recommendation adopted*, 2023 WL 1070361 (S.D. Ga. Jan. 27, 2023).

# CERTIFICATE OF COMPLIANCE
# WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I certify that:

This document complies with the applicable word limit because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 7,152 words.

This document complies with the typeface and type-style requirements of Fed. R. App. P. 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point CenturyExpd BT font.

Respectfully submitted this 20th day of March, 2025.

*/s/ Rohit P. Asirvatham*
Rohit P. Asirvatham

## CERTIFICATE OF SERVICE

I certify that on March 20, 2025, a copy of this brief was filed electronically using the Court's CM/ECF system, which automatically notifies the parties and counsel of record, and that copies were sent, by third-party commercial carrier for delivery overnight, to the Clerk of the Court.

Respectfully submitted this 20th day of March, 2025.

*/s/ Rohit P. Asirvatham*
Rohit P. Asirvatham